## MORROW v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO.*

### No. 7613; January 20, 1882.

**Corporations—Liability of Stockholder—Constitution of 1849.** The constitution of 1849 needed the aid of the act of 1850 (section 32) and the act of 1853 (section 16) in order to subject each member of a corporation to the paying of the debts of the company.

**Corporations—Liability of Stockholder—Constitution of 1882.** Section 3 of article 12 of the present constitution (1882), that provides for subjecting each member of a corporation to the paying of the company's debts, is self-executing and needs no legislation to give it practical effect; and is, like all other provisions of the instrument, mandatory.

**Corporation—Charter, Subjection to Future Legislation.**—A corporation organized "under general laws" as provided in a then prevailing constitution, which provided in the same connection that "all general laws pursuant to this instrument may be altered from time to time or repealed," is subject to appropriate enactments thereafter both constitutional and legislative.

**Constitutional Law—Obligation of Contracts—Change of Remedy.**—A legislative act giving creditors recourse to law, whereas their sole recourse theretofore was to equity, in proceeding against a stockholder, does not impair the obligation of contracts.

McGraw for petitioner; Neale for respondent.

McKINSTRY, J.—The return to the writ of certiorari shows that one Joseph Barron commenced an action in the justices' court of San Francisco to recover of petitioner, as stockholder in the "California Mutual Life Insurance Company," corporation, his alleged proportion of the indebtedness of the company upon an overdue policy; that petitioner, defendant in the action, demurred to and answered the com-

---

*For subsequent opinion in bank, see 64 Cal. 383, 1 Pac. 354.

plaint therein. The judgment was in favor of the defendant. The plaintiff appealed from the judgment to the superior court on questions of law, and on such appeal the superior court reversed the judgment of the justices' court and ordered a new trial of the action. The action was retried in the superior court and judgment rendered in favor of plaintiff for the sum of forty-four dollars and eighty cents.

It may be assumed that, unless the justice had jurisdiction of the subject matter of the action, the superior court had none to order a new trial, or to render any judgment except to reverse that of the justice.

The fourth article of the constitution of 1849 contained sections which read as follows:

"Sec. 32. Dues from corporations shall be secured by such individual liability of the corporators and other means as may be prescribed by law."

"Sec. 36. Each stockholder of a corporation or joint stock association shall be individually and personally liable for his proportion of all its debts and liabilities."

In French v. Teschemaker, 24 Cal. 540, it was said that section 36, above cited, was not complete or self-executing, or, in other words, did not, within its own terms, provide a complete rule of conduct, and that such defect was not cured by the rule of the common law; that legislation was therefore necessary to give the section a reasonable and practicable application.

The thirty-second section of the act of 1850, "concerning corporations," provided: "Each stockholder of any corporation shall be individually and personally liable for a portion of all its debts and liabilities, proportioned to the amount of stock owned by him." And in section 16 of the act of 1853 it was enacted: "Each stockholder shall be individually and personally liable for his proportion of all the debts and liabilities of the company contracted or incurred during the time that he was a stockholder; for the recovery of which joint and several actions may be instituted and prosecuted."

In French v. Teschemaker it was held that, although the act of 1853 omitted the definition of "proportion" contained in the act of 1850, yet the two acts combined contained what was omitted in the thirty-sixth section of article 4 of the con-

stitution, and whatever was needed to give the section of the constitution a practical operation.

Section 3 of article 12 of the present constitution is:

"Each stockholder of a corporation, or joint stock association, shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred during the time he was a stockholder, as the amount of stock or shares owned by him bears to the whole amount of the subscribed capital stock or shares of the corporation or association. The directors or trustees of corporations or joint stock associations shall be jointly and severally liable to the creditors and stockholders for all moneys embezzled or misappropriated by the officers of such corporation or joint stock association, during the term of office of such director or trustee."

It will be seen that the section of the present constitution more fully defines an exact liability on the part of the stockholders of all corporations than did the provisions of the acts of 1850 and 1853, referred to in French v. Teschemaker. It follows that it is self-executing and needs no legislation to give it practical operation. Like all other affirmative provisions of the constitution, it is mandatory. The primary liability of the stockholders of every corporation, thus specifically and clearly declared, may, of course, be enforced by an action at law, and legislation which should attempt to limit the liability, or to postpone it, or make it secondary to that of the corporation, would be unconstitutional and void.

The thirty-first section of article 4 of the constitution of 1849 reads:

"Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes. All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed."

Treating the act of April 2, 1866, under which "The California Mutual Life Insurance Company" was organized (Stats. 1865–66, p. 752), as a general law relating to all insurance companies—and it has been so treated by counsel—it is subject to section 31, article 4, of the former constitution.

Assuming, as contended for, that the act last cited does not contemplate a direct action at law against a stockholder, but requires a proceeding in equity on the part of creditors which

shall first exhaust the guaranty fund in the act provided for, and that, as a consequence, a justice of the peace has no jurisdiction to try a cause involving such equities, it will hardly be denied that, under the former constitution, the act of 1866 might have been amended so as to provide for a direct proceeding at law for the recovery by a creditor of the corporation from a stockholder of a definite and proper proportion of the debt. The stockholder could not complain that such an amendment impaired the obligation of his contract, since he became a stockholder in view of a possible alteration in the law which might change the nature of his liability—a fortiori, which might change the remedy for its enforcement.

The thirty-first section of article 4 of the constitution of 1849 authorized the repeal of any general incorporation law. It also authorizes any alteration of such general law, which, if it had constituted a portion of the original law, would not have been violative of the constitution, state or federal. The last clause of the section would have no reason for its existence, if it should be construed as intending that the general law could be only altered, provided the alteration did not affect the rights of corporations or corporators. Those who formed corporations under a general law, passed in accordance with the constitution, agreed that the state should retain the right to change their duties and liabilities, to the extent that their duties and liabilities might at first have been fixed and imposed in the general law. They received from the local sovereign the grant of a franchise; a grant which is so far of the nature of a contract as that they could not be deprived of any vested rights acquired under it without their consent. But as they consented to alterations, at the option of the state, when they formed a corporation and accepted the grant, any rights they might acquire were conditional and subject to such alterations at the will of the state. Ordinarily, it is true, the very idea of a contract excludes a power on the part of one of the contracting parties to change its terms. But a grant by the state is a contract sub modo. It is a contract only to the extent that the citizen shall not be deprived of rights under it without his consent. But if his consent be given when he acquires the qualified right, we know no reason why he should not be held to have yielded it as fully as if he should subsequently agree to surrender a vested right.

Section 1 of article 12 of the present constitution reads: "Corporations may be formed under general laws, but shall not be created by special act. All laws now in force in this state concerning corporations, and all laws that may be hereafter passed, pursuant to this section, may be altered from time to time or repealed."

It will scarcely be contended that section 31 of article 4 of the former constitution should receive so narrow a construction as that the "general laws" therein mentioned could have been altered or repealed only by a legislature assembled under that constitution; and, as a consequence, that the section last quoted of the present constitution could not authorize an alteration of a general incorporation law (passed while the former organic law was in effect) by the present legislative bodies, but that any attempted alteration—if it in any degree affected the rights or liabilities of a corporation or its members—would be violative of a provision of the constitution of the United States: "No state shall pass any law impairing the obligation of contracts": Art. 1, sec. 10.

Nor can it be asserted with more than plausibility that section 31 of article 4 of the former constitution did not contemplate an alteration or repeal of a general incorporation law by a provision of a new state constitution. The present constitution of California is a substitute for that adopted in 1849, as amended in 1863, and our present state government a continuance of that established when the constitution of 1849 was adopted. The former constitution provided for its own entire revision through a movement initiated by the senate and assembly created by it. The legislative bodies of the new constitution are the successors of the old, with the same powers, except so far as their powers have been further limited by additional constitutional restrictions. The last clause of section 31 of article 4 of the former constitution was undoubtedly drawn with reference to the tenth section of article 1 of the constitution of the United States, and the judicial decisions under it—notably the case of Dartmouth College v. Woodward, 4 Wheat. (U. S.) 519, 4 L. Ed. 630. Its primary purpose was to retain for the state the power to alter the terms of a grant of corporate rights; to relieve any such alteration of invalidity, as an impairment of the obligations of a contract. That learned commentator, Mr. Justice Cooley, has

assumed such to have been the purpose of similar provisions in state constitutions. "It is under the protection of the decision in the Dartmouth College case that the most enormous and threatening powers in our country have been created; some of the great and wealthy corporations actually having greater influence in the country at large, and upon the legislation of the country, than the states to which they owe their corporate existence. Every privilege granted or right conferred—no matter by what means or on what pretense—being made inviolable by the constitution, the government is frequently found stripped of its authority in very important particulars, by unwise, careless, or corrupt legislation; and a clause of the federal constitution whose purpose was to preclude the repudiation of debts and just contracts, protects and perpetuates the evil. To guard against such calamities in the future, it is customary now for the people in framing their constitutions to forbid the granting of corporate powers, except subject to amendment and repeal; but the improvident grants of an early day are beyond their reach": Cooley's Constitutional Limitations, 4th ed., note p. 340.

By the Revised Statutes of Rhode Island it was provided, "all acts of incorporation hereafter granted may be amended or repealed at the will of the general assembly," etc. It was held that an amendment which imposed an additional liability upon a stockholder was valid: Gardner v. Hope Insurance Co., 9 R. I. 194, 11 Am. Rep. 238. In Massachusetts it has been decided that the right of the legislature to amend, alter, or repeal the charter of a railroad corporation—the right being reserved by the general statutes—includes authority to withdraw powers granted to the corporation, and to confer new powers upon it and require their exercise, and is independent of the assent of the corporation: Mayor etc. Worcester v. N. & W. Co., 109 Mass. 103.

It is obvious that whether the right to alter the terms and conditions upon which a franchise or corporate right is held be provided for in the charter of the corporation, or is reserved in a general law under which it is organized, or reserved in the state constitution, the result must be the same.

We have shown that the general law under which a corporation was organized prior to the adoption of the present constitution could be altered, without the renewed consent of the corporators, by the legislature convened under the former constitution, and that such law can also be altered by the legislature under the present constitution. It would seem to be syllogistic that an alteration may be made directly by the organic law which may be made by enactment of a legislature deriving its powers from the organic law. By section 3 of article 12 of the present constitution each stockholder in every corporation is made directly and primarily liable for a certain proportion of its debts contracted or incurred during the time he is a stockholder. If, by any general law, passed while section 31 of article 4 of the former constitution was in operation, the liability of a stockholder for the debts of the corporation was made contingent and secondary, and not direct and primary, the liability has been rendered certain, direct, and primary by section 3 of article 12 of the present constitution; and, from the nature of the liability now existing, it may be enforced by a common-law action. Section 31 of article 4 of the former constitution operated to make all general laws under which corporations might be formed subject to alterations by the state, whether declared in a subsequent law or constitution.

The proceedings in the superior court are affirmed.

### CONCURRING OPINION.

As, in our opinion, the constitutional provision in question affected the remedy only, we concur in the judgment.